**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: _____

**BERKLEY ASSURANCE COMPANY**,

              Plaintiff,

   v.

**THE LAW OFFICE OF IAN T. HICKS LLC,**
**IAN T. HICKS,**
**MIKE NAZMINIA,**
**HANNAH POLMER,**
**WILLIAM RUDGE, and**
**KAYDI HOMME,**

              Defendants.

---

### COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT

---

Plaintiff, Berkley Assurance Company ("Berkley"), by way of this Complaint for Rescission and Declaratory Judgment against Defendants, The Law Office of Ian T. Hicks, LLC (the "Firm") and Ian T. Hicks ("Mr. Hicks"), and interested party Defendants Mike Nazminia, Hannah Polmer, William Rudge and Kaydi Homme, alleges as follows:

### NATURE OF THE ACTION

1.     This is an action, pursuant to 28 U.S.C. §§ 2201 and 2202, for: (1) rescission of a lawyers professional liability insurance policy, Policy No. VUMB0174303 (the "Policy") (a true and accurate copy of the Policy is attached as **Exhibit A**), that Berkley issued to the Firm; and (2) declaratory judgment.

1987249

2.      Specifically, Berkley seeks to rescind the Policy on the basis of material misrepresentations made by the Firm and Mr. Hicks in its April 28, 2020 written Application for Lawyers Professional Liability Insurance for the Policy (the "Application") (a true and accurate copy of the Application is attached as **Exhibit B**), which Berkley relied upon in underwriting the risk at the Policy's inception, and in a September 1, 2020 No Known Loss Letter (the "NKL Letter") (a true and accurate copy of the NKL Letter is attached as **Exhibit C**), which Berkley relied upon in reinstating the Policy after it was cancelled.

3.      In the Firm's Application for insurance submitted to Berkley, the Firm made a material representation by failing to answer the following question truthfully and accurately:

> 11.B.   Is applicant, or any other person for whom insurance is being requested, aware of any circumstances or incidents which may reasonably be expected to result in a claim? If yes, provide full details. (Add page if needed)

4.      The Firm responded "No" to Question 11.B., which response was not truthful and/or accurate.

5.      Had the Firm answered this question truthfully and accurately, Berkley would not have issued the Policy.

6.      Additionally, in the NKL Letter submitted to Berkley, the Firm made a material misrepresentation by incorrectly stating the following:

> The undersigned, as a condition precedent to the binding of the Policy referenced above, hereby states that, after diligent inquiry, there are no known losses, occurrences, claims, suits, acts, errors, omissions, or other events for which a claim for coverage under the Policy referenced above may be made. The undersigned understands that the insurer issuing the above referenced policy is relying upon the statements made in this Letter as an inducement to bind the above referenced policy.

2

7.      The Firm's signed statement in the NKL Letter was inaccurate and a material misrepresentation.

8.      Had the Firm not made a material misrepresentation in the NKL Letter, Berkley would not have reinstated the Policy.

9.      Accordingly, Berkley brings the instant action seeking a judicial declaration that the Policy is and should be rescinded and declared void *ab initio* based upon the Firm's material misrepresentations in the Application and in the NKL Letter. Berkley also brings the instant action for related declaratory relief that Berkley has no obligation to defend or indemnify the Firm or Mr. Hicks for the claims associated with disciplinary matters pending before the Colorado Supreme Court ("CSC") or any conduct that is the subject of the disciplinary matters. To the extent that Defendants Nazminia, Polmer, Rudge and Homme claim an interest in or to proceeds from the Policy because of their claimed rights or claims against the Firm and/or Mr. Hicks, said interested Defendants are properly joined in this anticipatory declaratory judgment action and are properly bound by the outcome.

## THE PARTIES

### Plaintiff

10.     Berkley is an insurance company incorporated under the laws of the State of Iowa and has its principal place of business in Scottsdale, Arizona. Berkley, therefore, is a citizen of Arizona.

### Defendants

11.     The Firm is a limited liability company organized under the laws of the State of Colorado with its principal place of business in Denver, Colorado.

1987249

12.     Mr. Hicks is an individual residing in the State of Colorado, and the principal of the Firm.

**Interested Parties**

13.     Defendant/Interested Party Michael Nazminia is, upon information and belief, an individual residing in the State of Colorado.

14.     Defendant/Interested Party Hannah Polmer is, upon information and belief, an individual residing in the State of Colorado.

15.     Defendant/Interested Party William Rudge is, upon information and belief, an individual residing in the State of Colorado.

16.     Defendant/Interested Party Kaydi Homme is, upon information and belief, an individual residing in the State of Colorado.

### JURISDICTION AND VENUE

17.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201-02 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iii) the matter is between citizens of different states.

18.     Venue is proper under 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events giving rise to this dispute occurred in this District.

### THE APPLICATION FOR THE POLICY

19.     In order to procure the Policy, the Firm submitted to Berkley the Application, dated April 28, 2020, that bears the signature of Mr. Hicks. (*See* **Exhibit B**.)

20.     In the Application, the Firm answered "No" to the following question:

4

> 11.B.   Is applicant, or any other person for whom insurance is being requested, aware of any circumstances or incidents which may reasonably be expected to result in a claim? If yes, provide full details. (Add page if needed)

21.     On the same page, above Mr. Hicks' signature, the Application states, in relevant part, as follows:

> WARRANTY
>
> I/We warrant to the Insurer, that I/We understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy and deemed incorporated therein, should the Insurer evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to the underwriting manager, Insurer and/or affiliates thereof. The statements in the Declarations are accurate and complete. That the statements made in the application and attachments and any other materials submitted are true and are the basis of this Coverage Part and are considered as incorporated into and constituting a part of this policy.
>
> That the statements made in the application and attachments and any other materials submitted are representations and that such representations are deemed material to the acceptance of the risk or the hazard assumed by us under this Coverage Part and that this Coverage Part is issued in reliance upon the truth of such representations.
>
> That in the event that the application, including attachments and any other materials submitted, contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by us, this Coverage Part in its entirety shall be void and of no effect.

## THE NKL LETTER FOR REINSTATEMENT OF THE POLICY

22.     In the NKL Letter (*see* **Exhibit C**), signed by Mr. Hicks on September 1, 2020, the Firm represented as follows:

> The undersigned, as a condition precedent to the binding of the Policy referenced above, hereby states that, after diligent inquiry, there are no known losses, occurrences, claims, suits, acts, errors, omissions, or other events for which a claim for coverage under the Policy referenced

above may be made. The undersigned understands that the insurer issuing the above referenced policy is relying upon the statements made in this Letter as an inducement to bind the above referenced policy.

The undersigned further states and understands that if any such loss, occurrence, claim, suit, acts, errors, omissions, or other event occurs during the policy period for the policy referenced above, that the execution and submission of this letter may result in the cancellation or rescission of the policy referenced above and the imposition of civil and/or criminal penalties. The undersigned further understands that if the insurer issuing the above referenced policy becomes obligated to make any payment under the above referenced policy with respect to any loss, occurrence, claim, suits, acts, errors, omissions, or other event occurring during the policy period for the above referenced policy, then such insurer reserves the right to seek full reimbursement of such payment from the undersigned.

## **THE BERKLEY POLICY**

23.     In reliance on the representations contained in the Application, Berkley issued the

Policy, which is a claims-made and reported Lawyers Professional Liability Policy,

No. VUMB0174303, to the Firm, for the policy period May 15, 2020 to May 15, 2021.  (*See*

**Exhibit A**.)

24.     The Policy's Insuring Agreement provides as follows:

SECTION I – COVERAGE

1.  Insuring Agreement

a.  We will pay, in excess of the Deductible shown in the Declarations, those sums any insured becomes legally obligated to pay as "damages" because of an act, error or omission arising out of your "legal services" rendered or that should have been rendered. We will have the right and duty to defend any insured against a "claim" seeking those "damages." However, we will have no duty to defend any insured against any "claim" seeking "damages" for "legal services" to which this insurance does not apply. We may, at our discretion, investigate and settle any potential "claim" or "suit" that may result. […]

c.  All "claims" for "damages" arising out of "legal services" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured and reported to us.

d.  All "claims" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, regardless of the number of "claims", "insureds", or claimants, will be considered to be one "claim" and will be deemed to have taken place at the time the first of these related "claims" is made against any insured and reported to us. All "claims" based upon such logically or causally connected "claims" shall be deemed to constitute a single "claim", and shall be subject to a single Deductible and the amount stated in the Declarations as Limits of Insurance – Limits of Liability Per Claim.

e.  We will pay, with respect to any "claim" or "suit" against an insured"

                                    ***

(8) Reasonable and necessary amounts paid for legal fees and expenses incurred by an insured to investigate and defend disciplinary proceedings incurred (*sic*) will be reimbursed upon submission to the Company of satisfactory written proof of such legal fees and expenses, provided that:

   (a) The act giving rise to the disciplinary proceeding is based upon or arises out of "legal services" provided by or on behalf of the "Named Insured";

   (b) The act giving rise to the disciplinary proceeding took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the "Policy Period;"

   (c) As of the effective date of this Policy, no insured had knowledge of such disciplinary proceeding or any fact, circumstance, situation or incident which would reasonably lead to a belief that such disciplinary proceeding was likely; and

   (d) The event is reported to us in writing during the "Policy Period."

1987249

The total limit for reimbursement under this Policy for all eligible disciplinary proceedings reported shall not exceed $10,000. No reimbursement pursuant to this section (8) will be made for any payment by or on behalf of the insured for taxes, criminal or civil fines, penalties, sanctions, registration or licensing fees, or any monetary judgment, award or settlement of any kind. Deductibles under this policy shall not apply to the coverage provided by Section I – Coverage 1. e. 8 (d).

All payments made under this Item e. reduce the Limits of Insurance.

***

25.     The Policy contains the following relevant definitions:

SECTION VII – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

1.  "Application" means:

    a.  The "application", including any material submitted therewith, for this policy; and

    b.  The "application(s)", including any material submitted therewith, for all previous policies issued by us providing continuous coverage until the inception date of this Policy.

2.  "Claim(s)" means a demand for monetary "damages" arising out of a "legal service" made against any insured by service of "suit", the institution of arbitration or administrative proceedings or otherwise, but does not include a demand for equitable or non-pecuniary relief. "Claim" includes related claims.

3.  "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies.

***

5.  "Legal services" means usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured"

1987249

described in the Declarations of this Policy including the following services as:

a.   Notary Public;

b.   an Arbitrator or Mediator;

c.   an Administrator, Conservator, Receiver, Executor, Trustee, Guardian or while acting in a similar fiduciary capacity for clients of the "Named Insured";

d.   a member of a formal accreditation board, ethics review or peer review board if asked to serve on behalf of the "Named Insured";

e.   a member of a Bar Association.

"Legal services" also includes "personal injury" to which this insurance applies.

6.   "Named Insured" means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named on the Declarations.

\*\*\*

8.   "Policy Period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to Section V. 8. of this Policy.

\*\*\*

11.  "Suit(s)" means a civil proceeding with which this insurance applies. "Suit" includes:

a.   An Arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

b.   Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent.

26.    The Policy includes the following exclusion:

This Policy does not apply to any "claim":

    a.  Based on or directly or indirectly arising from:

        (1)  A "Legal Service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "Legal Service" could give rise to a "Claim";

        (2)  Any common fact, circumstance, transaction advice or decision involved in a "legal service" reported as a "claim" or potential "claim" under any prior Policy; or

        (3)  Any "claim", "suit", act, error or omission disclosed in the "application" for this Policy.

***

## THE MISREPRESENTATIONS

### Material Misrepresentation Regarding Question 11.B. in the Application

27.    In the Application, dated April 28, 2020, in response to Question 11.B., the Firm and Mr. Hicks stated that they were not aware of any circumstances or incidents which may reasonably be expected to result in a claim. (*See* **Exhibit B**.)

28.    On April 17, 2019, based on a referral from Igor Raykin, Esq., Ms. Homme and Mr. Hicks discussed a potential lawsuit against Ms. Homme's ex-boyfriend.

29.    Subsequently, on April 17, 2019, Ms. Homme and Mr. Hicks exchanged phone calls, emails and text exchanges related to Ms. Homme's potential lawsuit, including one email in which Mr. Hicks referred to Ms. Homme as a "superclient" (*sic*) after she set up a shared document in order to collaborate on her case.

30.    On or about April 19, 2019, Ms. Homme met with Mr. Hicks to pay a retainer and sign a retainer agreement; however, just prior to signing the retainer agreement that day, the two engaged in a sexual relationship.

31.     Colorado Rule of Professional Conduct 1.8(j) provides that "[a] lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."

32.     Mr. Hicks was the principal of the Firm at the time of the Application and the Firm's sole attorney.

33.     Mr. Hicks currently remains the principal of the Firm and its sole attorney.

34.     Mr. Hicks was aware of circumstances or incidents which may reasonably be expected to result in a claim, particularly his sexual relationship with Ms. Homme and the fact that it did not exist between them when the client-lawyer relationship commenced, but the Firm did not disclose that fact to Berkley on the Application, which was a material misrepresentation.

**Material Misrepresentations in the NKL Letter**

35.     In the NKL Letter, signed by Mr. Hicks on September 1, 2020, Mr. Hicks stated "that, after diligent inquiry, there are no known losses, occurrences, claims, suits, acts, errors, omissions, or other events for which a claim for coverage under the Policy referenced above may be made." (*See* **Exhibit C**.)

36.     Mr. Hicks further stated in the NKL Letter  that he understood "that if any such loss, occurrence, claim, suit, acts, errors, omissions, or other event occurs during the policy period for the [Policy], that the execution and submission of this letter may result in the cancellation or rescission of the [Policy] and the imposition of civil and/or criminal penalties."

37.     Mr. Nazminia informed Mr. Hicks twice in July 2020 that he would be reporting him to the CSC.

38. According to an August 10, 2020 letter from Mr. Nazminia to the CSC, Mr. Nazminia advised Mr. Hicks on July 7, 2020 via text message that he intended to report Mr. Hicks' conduct to the CSC.

39. According to an October 12, 2020 letter from Mr. Nazminia to the CSC, Mr. Nazminia advised Mr. Hicks on July 22, 2020 that he intended to report Mr. Hicks to the CSC.

40. A copy of the July 22, 2020 text message from Mr. Nazminia to Mr. Hicks states that Mr. Hicks' "lack of action has been absolutely damaging to [Nazminia's] business" and that Mr. Nazminia is reporting Mr. Hicks to the CSC.

41. Additionally, the CSC issued a letter to Mr. Hicks, dated August 20, 2020, advising of a request for investigation against Mr. Hicks related to Mr. Nazminia. (A true and correct copy of the CSC's August 20, 2020 request for investigation letter is attached as **Exhibit D**.)

42. Accordingly, based on the communications from Mr. Nazminia in July 2020, as well as the August 20, 2020 CSC letter, Mr. Hicks was aware of occurrences, claims, suits, acts, errors, omissions, or other events, related to his representation of Mr. Nazminia, for which a claim for coverage under the Policy may be made.

43. Additionally, the CSC issued a letter to Mr. Hicks, dated August 24, 2020, advising of a request for investigation against Mr. Hicks which was filed by Hannah Polmer related to Mr. Hicks' representation of Ms. Polmer and William Rudge. (A true and correct copy of the CSC's August 24, 2020 request for investigation letter is attached as **Exhibit E**.)

44. Accordingly, based on the August 24, 2020 CSC letter, Mr. Hicks was aware of occurrences, claims, suits, acts, errors, omissions, or other events, related to his representation of Ms. Polmer and Mr. Rudge, for which a claim for coverage under the Policy may be made.

45.     Mr. Hicks was the principal of the Firm at the time of the NKL Letter and the Firm's sole attorney.

46.     Mr. Hicks currently remains the principal of the Firm and its sole attorney.

47.     Mr. Hicks was aware of Mr. Nazminia's two July 2020 threats to report Mr. Hicks to the CSC based on his representation of Mr. Nazminia, but the Firm did not disclose that fact to Berkley in the NKL Letter.

48.     Mr. Hicks was aware of Mr. Nazminia's request for investigation to the CSC based on the August 20, 2020 letter from the CSC, but the Firm did not disclose that fact to Berkley in the NKL Letter, which was a material misrepresentation.

49.     Mr. Hicks was aware of Ms. Polmer's request for investigation to the CSC based on the August 24, 2020 letter from the CSC, but the Firm did not disclose that fact to Berkley in the NKL Letter, which was a material misrepresentation.

## THE PENDING DISCIPLINARY MATTERS

50.     As noted above, the CSC issued a letter to Mr. Hicks, dated August 20, 2020, advising of a request for investigation (assigned #20-1965 by the CSC) against Mr. Hicks related to Mr. Nazminia. (*See* **Exhibit D**.)

51.     Additionally, as noted above, the CSC issued a letter to Mr. Hicks, dated August 24, 2020, advising of a request for investigation (assigned #20-2077 by the CSC) against Mr. Hicks which was filed by Hannah Polmer related to her and William Rudge. (*See* **Exhibit E**.)

52.     Further, the CSC issued a letter to Mr. Hicks, dated November 23, 2020, advising of another request for investigation (assigned #20-2997) by the CSC related to Hannah Polmer. (A

true and correct copy of the CSC's November 23, 2020 request for investigation letter is attached as **Exhibit F**.)

53.    Additionally, the CSC issued a letter to Mr. Hicks, dated November 17, 2020, advising of a request for investigation (assigned #20-2927 by the CSC), related to Kaydi Homme. (A true and correct copy of the CSC's November 17, 2020 request for investigation letter is attached as **Exhibit G**.)

54.    Finally, the CSC issued a letter to Mr. Hicks, dated November 19, 2020, advising of a request for investigation (assigned #20-3103 by the CSC), related to Kaydi Homme. (A true and correct copy of the CSC's November 19, 2020 request for investigation letter is attached as **Exhibit H**.)

55.    On March 30, 2021, Berkley received notice of claims associated with these disciplinary matters pending before the CSC.

56.    On April 15, 2021, Berkley issued a reservation of rights letter to the Firm regarding the claims associated with these disciplinary matters pending before the CSC and further advised that it was continuing to review the voluminous documents provided on the Firm's behalf.

57.    On May 19, 2021, Berkley disclaimed any obligation to defend or indemnify the Firm or Mr. Hicks regarding the referenced CSC disciplinary matters based upon the application of the Policy's prior knowledge condition (Section I – Coverage, Paragraph 1.e.(8)(c)) and prior knowledge exclusion (Exclusion 2.a.(1)), and further reserved its rights:

- to seek a judicial declaration that the Policy is deemed rescinded and void *ab initio*;

- with respect to the applicable limits and/or deductibles;

- with respect to the CSC disciplinary matters not alleging "damages" that do not arise out of an act, error or omission in the conduct of an insured's "legal services" as that term is defined in the Policy;

- to disclaim coverage based on Exclusion 2.a.(2), for claims based on any common fact, circumstance, transaction advice or decision involved in a "legal service" reported as a "claim" or potential "claim" under any prior Policy;

- to disclaim coverage based on Exclusion 2.d., to the extent the claims are based on or directly or indirectly arising out of the rights or duties under any agreement including disputes over fees for services;

- to disclaim coverage based on Exclusion 2.j.(1), (2) and (3), which excludes coverage based on or directly or indirectly arising out of or resulting from: (1) any act committed with knowledge of its wrongful nature or with the intent to cause damage; or (2) the gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or (3) any criminal, fraudulent, or dishonest act; and

- to disclaim coverage to the extent Mr. Hicks failed to comply with the Conditions of the 2020 Berkley Policy, including the Duties in the Event of a "Claim" and the Notice of Potential "Claims".

## FIRST CAUSE OF ACTION
### (RESCISSION)

58.     Berkley repeats and realleges each and every one of the allegations in paragraphs 1 through 57 as if set forth at length herein.

1987249

59.     On April 17, 2019, Ms. Homme and Mr. Hicks discussed a potential fraud lawsuit against Ms. Homme's ex-boyfriend.

60.     Subsequently, on April 17, 2019, Ms. Homme and Mr. Hicks exchanged phone calls, emails and text exchanges related to Ms. Homme's lawsuit.

61.     On or about April 19, 2019, Ms. Homme met with Mr. Hicks to pay a retainer and sign a retainer agreement; however, just prior to signing the retainer agreement that day, the two engaged in a sexual relationship.

62.     The April 19, 2019 sexual encounter between Mr. Hicks and Ms. Homme was a violation of Colorado Rule of Professional Conduct 1.8(j).

63.     Nonetheless, in the Application, a material misrepresentation was made because the Firm and Mr. Hicks stated that they were aware of any circumstances or incidents which may reasonably be expected to result in a claim.

64.     According to an August 10, 2020 letter from Mr. Nazminia to the CSC, Mr. Nazminia advised Mr. Hicks on July 7, 2020 via text message that he intended to report Mr. Hicks' conduct to the CSC.

65.      According to an October 12, 2020 letter from Mr. Nazminia to the CSC, Mr. Nazminia advised Mr. Hicks on July 22, 2020 that he intended to report Mr. Hicks to the CSC.

66.     A copy of the July 22, 2020 text message from Mr. Nazminia to Mr. Hicks states that Mr. Hicks' "lack of action has been absolutely damaging to [Nazminia's] business" and that Mr. Nazminia is reporting Mr. Hicks to the CSC.

67.     Additionally, the CSC issued a letter to Mr. Hicks, dated August 20, 2020, advising of a request for investigation against Mr. Hicks related to Mr. Nazminia.

1987249

68.     Additionally, the CSC issued a letter to Mr. Hicks, dated August 24, 2020, advising of a request for investigation against Mr. Hicks which was filed by Hannah Polmer and was related to her and William Rudge.

69.     In the NKL Letter, Mr. Hicks asserted "that, after diligent inquiry, there are no known losses, occurrences, claims, suits, acts, errors, omissions, or other events for which a claim for coverage under the Policy referenced above may be made."

70.     Mr. Hicks further stated in the NKL Letter and he understood "that if any such loss, occurrence, claim, suit, acts, errors, omissions, or other event occurs during the policy period for the [Policy], that the execution and submission of this letter may result in the cancellation or rescission of the [Policy] and the imposition of civil and/or criminal penalties."

71.     The material misrepresentations, omissions, concealment of facts, or incorrect statements included in the Application materially affected Berkley's acceptance of risk and/or the hazard that Berkley assumed. Berkley was unaware of the material misrepresentations, omissions, concealment of facts, and/or incorrect statements in the Application and would not have issued the Policy had it been made aware of the true facts.

72.     The material misrepresentations, omissions, concealment of facts, and/or incorrect statements included in the NKL Letter materially affected Berkley's acceptance of risk and/or the hazard that Berkley assumed. Berkley was not aware of the material misrepresentations, omissions, concealment of facts, or incorrect statements in the NKL Letter and would not have reinstated the Policy had it been made aware of the true facts.

73.     In issuing the Policy to the Firm, Berkley reasonably relied upon the Firm's representations in the Application.

17

74.     In reinstating the Policy to the Firm, Berkley reasonably relied upon the Firm's representations in the NKL Letter.

75.     As a result of the material misrepresentations, omissions, concealment of facts, and/or incorrect statements in the Application and/or the NKL Letter, the Court should rescind the Policy and declare that there is no coverage for any claim made against the Firm, or any other Insured under the Policy, including, without limitation, the claims of Mike Nazminia, Hannah Polmer, William Rudge and Kaydi Homme.

**WHEREFORE**, Berkley respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

a.   Rescinding the Policy;

b.   Declaring the Policy void *ab initio*;

c.   Declaring that Berkley has no duty to defend or indemnify the Firm or Mr. Hicks against any claim;

d.   Declaring that the interested Defendants have no right, interest or claim in or to the proceeds of the Policy; and

e.    Granting to Berkley such other relief as the Court deems just and proper.

Dated: July 7, 2021
       Denver, Colorado

18

1987249

Respectfully submitted,

**MONTGOMERY AMATUZIO**
**CHASE BELL JONES, LLP**

By: /s/ *Kevin F. Amatuzio*
          Kevin F. Amatuzio

4100 E. Mississippi Ave, 16th Floor
Denver, Colorado 80246
Telephone: (303) 592-6600
Fax: (303) 592-6666
kamatuzio@mac-legal.com

*Attorneys for Plaintiff*
*Berkley Assurance Company*

1987249