# EXHIBIT A



# CERTIFICATION

I, Tammy Garland, do hereby attest to and certify the attached copy of policy VUMB0174303 issued to The Law Office of Ian T Hicks LLC for the policy period of 05/15/2020 – 05/15/2021 by Berkley Assurance Company is a true and accurate duplicate of the original.

_____

Tammy Garland, Vice President, Claims
Verus Underwriting Managers

03/31/2021
_____

Date

4820 Lake Brook Drive, Suite 200
Glen Allen, VA 23060
877.598.3787

7807 E. Peakview Ave, Suite 350
Centennial, CO 80111
303.357.2642

www.verusins.com
claimsmail@verusins.com

**EXHIBIT A, PAGE 1**

# Thank You!

You are now part of the Berkley family.

Placing your insurance coverage with Berkley Assurance Company means you are covered by one of the nation's premier commercial property and casualty providers.

You can rest assured knowing you are covered by a company with strong financial ratings:
A.M. Best:  A+ (Superior) Financial Size Category XV
Standard & Poor's:  A+ (Strong)

Your policy is being managed by Verus Underwriting Managers, one of W.R. Berkley's team of 53 operating units. Our talented staff is committed to providing excellent customer service to our insureds.

To learn more about W.R. Berkley Corporation, please visit our website at www.wrberkley.com

---

## Contact Information:

If you have general questions about your policy or coverage, please contact the Retail Agent from whom you purchased your policy.

## Claims:

For Claims, please contact Verus Underwriting Managers:
Toll Free:  877.598.3787
Fax:  804.525.1362
email:  newclaims@verusins.com
4820 Lake Brook Drive . Suite 200 . Glen Allen VA 23060



W. R. BERKLEY INSURANCE GROUP™

**EXHIBIT A, PAGE 2**

# PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;  and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Financial service providers, such as insurance agents and/or brokers

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

**EXHIBIT A, PAGE 3**

# Policyholder Notice

# Claims Reporting Instructions

In the event of any "occurrence" that may result in a claim against this policy you should immediately report the incident to your agent or to Verus Underwriting Managers. For more specific detail as to your reporting requirements please review the Conditions requirement contained in your policy that defines your "Duties in the Event of an Occurrence, Offense, Act, Error or Omission, Claim or Suit".

New claims can be reported by email, fax, mail or phone 24 hours a day, 7 days a week.

| | |
|---|---|
| Email: | NewClaims@verusins.com or VUMClaims@verusins.com |
| Fax: | 804-525-1362 |
| Mail: | Verus Underwriting Managers |
| | Attention: Claims Department |
| | 4820 Lake Brook Drive, Suite 200 |
| | Glen Allen, Virginia  23060 |
| Phone: | 804-525-1360 |
| | 877-598-3787 |

**EXHIBIT A, PAGE 4**

# BERKLEY ASSURANCE COMPANY

### A Stock Corporation
**Domicile Office: 11201 Douglas Avenue, Urbandale, IA 50322**
**Administrative Office: 7233 E. Butherus Drive, Scottsdale, AZ 85260**

## ERRORS AND OMISSIONS – CLAIMS-MADE AND REPORTED COVERAGE DECLARATIONS

**POLICY NUMBER:   VUMB0174303**                    **RENEWAL OF:**     VUMB0174302

| NAMED INSURED AND ADDRESS: | PRODUCER'S NAME AND ADDRESS: |
|---|---|
| The Law Office of Ian T Hicks LLC<br>6000 E Evans Ave Bldg 1 #360<br>Denver, CO 80222 | Hull & Company - Denver<br>8400 East Prentice Avenue<br>Suite  535<br>Greenwood Village, CO 80111 |

**POLICY PERIOD:** May 15, 2020 to May 15, 2021 at 12:01 a.m. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE: | |
|---|---|
| Aggregate Limit | $1,000,000 |
| Limit of Liability Per Claim | $1,000,000 |

| NOTICE TO THE INSURED: |
|---|
|  |

THIS COVERAGE PART PROVIDES CLAIMS-MADE AND REPORTED COVERAGE WHICH PROVIDES LIABILITY COVERAGE ONLY IF A CLAIM IS MADE AND REPORTED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

| RETROACTIVE DATE (APPLICABLE TO CLAIMS MADE COVERAGES ONLY): |
|---|
| April 15, 2016 |

| DESCRIPTION OF BUSINESS: | |
|---|---|
| FORM OF BUSINESS: | Limited Liability Company (LLC) |
| PROFESSIONAL SERVICES: | Licensed Lawyer |

**EXHIBIT A, PAGE 5**

POLICY NO:   VUMB0174303                    Named Insured:   The Law Office of Ian T Hicks LLC

| DEDUCTIBLES: | |
|---|---|
| **Professional Liability - E&O** | |
| Deductible Per Claim | $2,500 |
| Aggregate Deductible | $7,500 |

| PREMIUM: | |
|---|---|
| TOTAL PREMIUM $ | ▉ |
| TERRORISM ADDITIONAL PREMIUM $ | ▉ |
| ADVANCE PREMIUM $ | ▉ |
| MINIMUM EARNED PREMIUM $ | ▉ |

**FORMS AND ENDORSEMENTS (Other than applicable Forms and Endorsements shown elsewhere in the policy):**
Forms and Endorsements applying to this Coverage Part and made a part of the policy at time of issue:
SEE SC-FORMS (10-17) — SCHEDULE OF FORMS AND ENDORSEMENTS.

**NAME AND ADDRESS OF UNDERWRITING OFFICE:**
Verus Underwriting Managers
7807 E. Peakview Avenue, Suite 350
Centennial, CO 80111
Phone: (303) 357-2640  See Claims Notice for Claims contact information.

**THESE DECLARATION(S) TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), AND ANY ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

IN WITNESS WHEREOF, Berkley Assurance Company designated herein has extended and attested these presents.

Ira S. Lederman
Secretary

W. Robert Berkley, Jr.
President

# SCHEDULE OF FORMS AND ENDORSEMENTS

**Policy Number:**       VUMB0174303

**Named Insured:**       The Law Office of Ian T Hicks LLC

**FORMS ATTACHED TO AND MADE A PART OF THIS POLICY AT INCEPTION:**

| FORM NUMBER | FORM TITLE |
| --- | --- |
| VUM 99 40 02 17 | Policy Cover Page 2017 |
| VPRF 02 00 (10-17) | Errors and Omissions - Claims-Made and Reported Coverage Declarations |
| SC-FORMS (10-17) | Schedule of Forms and Endorsements |
| IL 00 17 11 98 | Common Policy Conditions |
| VPRF 02 02 10 15 | Lawyers Professional Liability Coverage Form Claims-Made and Reported |
| IL 00 21 10 15 | Nuclear Energy Liability Exclusion Endorsement |
| VPRF 10 20 11 14 | Additional Exclusion Endorsement |
| VPRF 11 77 07 17 | Electronic Data and Cyber Risk Exclusion |
| VUM SOS 01 16 | Service of Suit |
| VUM 99 22 11 10 | Policyholder Notice - Colorado |
| VUM 99 32 01 16 | Minimum Earned Premium |

**EXHIBIT A, PAGE 7**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM
# CLAIMS-MADE AND REPORTED

THIS IS A CLAIMS MADE AND REPORTED POLICY
PLEASE READ CAREFULLY

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered and discuss the coverage with your insurance agent or broker.

Throughout this Policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations, and any other person or organization qualifying as a "Named Insured" under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII - DEFINITIONS.

In consideration of payment of the premium, in reliance upon the statements in the "application" (and all attachments and materials submitted therewith), and subject to all the provisions of this Policy, we agree with you as follows:

## SECTION I – COVERAGE

1.  Insuring Agreement

    a.  We will pay, in excess of the Deductible shown in the Declarations, those sums any insured becomes legally obligated to pay as "damages" because of an act, error or omission arising out of your "legal services" rendered or that should have been rendered. We will have the right and duty to defend any insured against a "claim" seeking those "damages." However, we will have no duty to defend any insured against any "claim" seeking "damages" for "legal services" to which this insurance does not apply. We may, at our discretion, investigate and settle any potential "claim" or "suit" that may result.  However:

        (1) The amount we will pay for "damages" is limited as described in SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE;

        (2) Our right and duty to defend end when we have used up the applicable Limits of Insurance in the payment of judgments, settlements or defense costs.

    b.  This insurance applies to "claims" for "damages" only if:

        (1) The "damages" arise out of an act, error or omission in the conduct of an insured's "legal services";

        (2) The "damages" arise out of "legal services" that took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy;

        (3) The "claim" is reported in writing to us subsequent to the effective date and prior to the expiration date of the "Policy Period" or Extended Reporting Periods, if applicable; and

        (4) A potential "claim", event or circumstance that could give rise to a subsequent covered "claim" is reported in writing to us during the "policy period."

    c.  All "claims" for "damages" arising out of "legal services" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured and reported to us.

    d.  All "claims" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, regardless of the number of "claims", "insureds", or claimants, will be considered to be one "claim" and will be deemed to have taken place at the time the first of

**EXHIBIT A, PAGE 9**

these related "claims" is made against any insured and reported to us. All "claims" based upon such logically or causally connected "claims" shall be deemed to constitute a single "claim", and shall be subject to a single Deductible and the amount stated in the Declarations as Limits of Insurance – Limits of Liability Per Claim.

e.  We will pay, with respect to any "claim" or "suit" against an insured:

(1)  All fees, costs or expenses resulting from the defense and appeal of a covered "claim" other than salary costs of our employees;

(2)  All expenses we incur;

(3)  The cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance;

(4)  All reasonable expenses incurred by any insured at our request to assist in the investigation or defense of a "claim" or "suit", including actual loss of earnings up to $500 a day because of time missed from work;

(5)  All costs taxed against any insured in a "suit";

(6)  Prejudgment interest awarded against an insured on that part of the judgment we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer;

(7)  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Insurance;

(8)  Reasonable and necessary amounts paid for legal fees and expenses incurred by an insured to investigate and defend disciplinary proceedings incurred will be reimbursed upon submission to the Company of satisfactory written proof of such legal fees and expenses, provided that:

(a)  The act giving rise to the disciplinary proceeding is based upon or arises out of "legal services" provided by or on behalf of the "Named Insured";

(b)  The act giving rise to the disciplinary proceeding took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the "Policy Period;"

(c)  As of the effective date of this Policy, no insured had knowledge of such disciplinary proceeding or any fact, circumstance, situation or incident which would reasonably lead to a belief that such disciplinary proceeding was likely; and

(d)  The event is reported to us in writing during the "Policy Period."

The total limit for reimbursement under this Policy for all eligible disciplinary proceedings reported shall not exceed $10,000. No reimbursement pursuant to this section (8) will be made for any payment by or on behalf of the insured for taxes, criminal or civil fines, penalties, sanctions, registration or licensing fees, or any monetary judgment, award or settlement of any kind. Deductibles under this policy shall not apply to the coverage provided by Section I – Coverage 1. e. 8 (d).

All payments made under this Item e. reduce the Limits of Insurance.

2.  Exclusions

This Policy does not apply to any "claim":

a.  Based on or directly or indirectly arising from:

(1)  A "Legal Service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "Legal Service" could give rise to a "Claim";

(2)  Any common fact, circumstance, transaction advice or decision involved in a "legal service" reported as a "claim" or potential "claim" under any prior Policy; or

**EXHIBIT A, PAGE 10**

(3) Any "claim", "suit", act, error or omission disclosed in the "application" for this Policy.

b. Based on or directly or indirectly arising from an insured's "legal services" for:

(1) Any other insured under the Policy;

(2) Any firm, organization, entity or trust not named in the Declarations in which any insured

(a) has or had any ownership interest;

(b) is or was a director, officer, partner, principal, shareholder or employee; or

(c) at any time managed, operated or exercised direct or indirect control.

However (2) above does not apply to any entity that qualifies as "predecessor firm" or for "legal services" provided to an entity in which any Insured, individually or collectively have ownership representing 10% or less of the ownership of that entity.

c. Based on or directly or indirectly arising out of the insured's services or capacity as an accountant or tax advisor, real estate agent or broker, investment advisor or broker, or insurance agent or broker;

d. Based on or directly or indirectly arising out of the rights or duties under any agreement including disputes over fees for services;

e. Based on or directly or indirectly arising out of any liability assumed by any insured under any contract or agreement. This exclusion does not apply to liability any insured would have incurred in the absence of such contract or agreement;

f. Based on or directly or indirectly arising out of any actual or alleged bodily injury to or sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof. This exclusion does not apply to an act, error or omission by or on behalf of the "Named Insured" in providing "legal services" that are otherwise covered by this policy;

g. Based on or directly or indirectly arising out of or resulting from an act, error, or omission of an individual or entity with whom any insured shares common office space or common office facilities who is not an insured under this Policy;

h. Based on or directly or indirectly arising out of or resulting from any insured's activities performed in the capacity of a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; except if any insured is deemed to be a fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

i. Based on or directly or indirectly arising out of or resulting from any insured's capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof unless an insured is deemed as an employee solely by virtue of rendering "legal services" to such governmental body, the remuneration for which services inures to the benefit of an insured;

j. Based on or directly or indirectly arising out of or resulting from:

(1) Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

(2) The gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or

(3) Any criminal, fraudulent, or dishonest act.

However, we shall defend such allegations against any insured if it involves a "claim" otherwise covered under this Policy until final adjudication.

k. Based on or directly or indirectly arising out of any "claim" based on discrimination by any insured on the basis of age, color, race, sex, creed, national origin, marital status, handicap, physical disability or sexual preference;

l. For payment of any fine, sanction or penalty of any nature against any insured;

m. Relating in whole or in part to the dissolution of any law firm unless an insured is not a party in the dissolution and the "claim" is based on or directly or indirectly arises out of any insured's representation of one or more parties to the dissolution;

**EXHIBIT A, PAGE 11**

n.  Based on or directly or indirectly arising out of any insured's capacity as a beneficiary or distributee of any trust or estate;

o.  Based on or directly or indirectly arising out of any insured's failure or refusal to hire or employ; or any insured's termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or any other breach of duty arising out of employment-related practices, policies, acts, or omissions;

p.  For infringing upon another's patent, copyright, trademark, trade secret, trade dress, slogan, advertising idea or other intellectual property;

q.  Any "damages" arising out of any violation of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended or any state Blue Sky or securities law, or any similar state or federal statutes, and any regulations or order issued pursuant to any of the foregoing statutes;

r.  Any "damages" arising out of, or as a consequence of war, invasion, acts of foreign enemies, hostilities, civil war, rebellion, revolution, insurrection, military or usurped power, confiscation, nationalization, requisition or destruction of or damage to property by or under the order of any government, public or local authority;

s.  Based on or directly or indirectly arising out of or resulting from:
    (1)  The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time;

    (2)  Any loss, cost or expense arising out of any:
        (a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or
        (b)  "Claim" or suit by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".
    (3)  The failure to discover or disclose the existence or amount of "hazardous materials";

    (4)  Any obligations to share "damages" with or indemnify another party whom must pay "damages" because of injury or damage relating to "hazardous materials"; or

    (5)  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), (3), or (4) above; whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

    This exclusion does not apply to an act, error or omission by or on behalf of the "Named Insured" in providing "legal services" that are otherwise covered by this policy.

## SECTION II – WHO IS AN INSURED

1.  The "Named Insured" stated in the Policy Declarations and any "predecessor firm" of the "Named Insured."

2.  Any person who is or was your partner, officer, member, director, stockholder, of counsel or independent contractor but only for "legal services" rendered on your behalf or on behalf of any "predecessor firm." However this provision does not include any such member, partner, officer, director, stockholder, of counsel or independent contractor who joins your firm after the inception date of this Policy unless reported to us as required in SECTION V – CONDITIONS, 11. Change in Membership of the Firm.

3.  Any non-lawyer who is or was your employee but solely while acting on your behalf or on behalf of any "predecessor firm".

4.  The heirs, executors, administrators and legal representatives of each insured, as defined in 1., 2., and 3. above, in the event of death, incapacity or bankruptcy of such insured, but only for liability arising out of "legal services" rendered by any insured prior to such insured's death, incapacity, or bankruptcy.

## SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE

1.  Our liability for each "claim" covered under this Policy shall not exceed the amount stated in the Declarations as Limits of Insurance – Limit of Liability Per Claim. This limit is the maximum amount for which we are liable for the sum of all fees, costs and expenses incurred in the defense of and "damages" paid on each "claim" or "suit" covered hereunder.

2.  Subject to Limits of Insurance – Limit of Liability Per Claim, our liability for all "claims" covered under this Policy shall not exceed the amount stated in the Declarations as Limits of Insurance – Aggregate Limit. This limit is the maximum amount for which we are liable for the sum of all fees, costs and expenses incurred in the defense of and "damages" paid for all "claims" covered under this Policy.

3.  The number of insureds covered by the Policy shall not operate to increase the Limits of Insurance.

4.  Two or more "claims" or "suits" arising out of the same, related or continuous "legal services" shall be considered a single "claim."

5.  If two or more Policies of insurance issued by us apply to the same "claim" or "claims" for which any insured is legally liable, we shall not be liable under this Policy for more than the Limits of Insurance of that Policy issued by us which has the highest applicable Limits of Insurance. If the Limits of Insurance on each Policy is the same, only one limit will apply.

6.  Our obligation under the Policy to pay "damages" on your behalf applies only to the amount of "damages" in excess of any Deductible amounts stated in the Declarations as applicable to such coverage.

    We, at our sole election and option, may pay any part of or all the Deductible amount to effect settlement of any "claim" or "suit", and upon notification of the action taken, you shall reimburse us within thirty (30) days for such part of the Deductible amount as has been paid by us.

    If an aggregate deductible is indicated in the Declarations, this Deductible applies as follows:

    a.  All amounts you pay as Deductibles will be limited to the amount shown as the Aggregate Deductible; and

    b.  All "damages" and fees, costs and expenses incurred in the defense of a "suit" will apply towards this Aggregate Deductible.

## SECTION IV – TERRITORY

This Policy only applies to "claims" which are brought in the United States, its territories or possessions, Puerto Rico or Canada.

## SECTION V – CONDITIONS

1.  Bankruptcy

    Bankruptcy or insolvency of any insured or of the estate of an insured will not relieve us of our obligations under this Policy.

2.  Duties in the Event of a "Claim"

    a.  If during the "Policy Period" or any Extended Reporting Period (if applicable) a "claim" is brought against any insured arising out of an event or circumstance, you must:

        (1) Immediately record the specifics of the "claim" or "suit" and the date received;

        (2) Provide us with written notice of the "claim" or "suit" as soon as practicable, but in no event later than thirty (30) days after the end of the "Policy Period" or before the end of any Extended Reporting Period (if applicable);

        (3) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit"; and

**EXHIBIT A, PAGE 13**

    (4) Cooperate with us in the investigation, defense or settlement of the "claim" including:

        (a) Upon request, submit to examination and interrogation under oath by our representative;

        (b) Attend hearings, depositions and trials as requested by us;

        (c) Assist in securing and giving evidence and obtaining the attendance of witnesses; and

        (d) Provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us.

  b. No insured will, except at an insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Notice of Potential "Claims"

If, during the "Policy Period", the First "Named Insured" shall become aware of any event or circumstance which may reasonably be expected to give rise to a "claim" being made against any insured, the First "Named Insured" must notify us in writing during the "Policy Period." The written notice shall include:

  a. Specific details of the event or circumstances and why you believe it may give rise to a "claim;"

  b. The names and addresses of any injured persons and potential claimants;

  c. The names and addresses of any witnesses and the person(s) who committed or caused the possible event or circumstance; and

  d. Any written notice from the potential claimant describing the event or circumstance.

If this notice is submitted to us during the "Policy Period", then any "claim" that is subsequently made against any insured arising out of this event or circumstance about which notice was given to us shall be deemed for the purpose of this Policy to have first been made during the "Policy Period." This provision shall not apply to, nor shall the reporting of events, circumstances, or potential "claims" be permitted, during any Basic or Supplemental Extended Reporting Period.

4. Legal Action Against Us

No person or organization has a right under this Policy:

  a. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

  b. To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial but we will not be liable for "damages" that are not payable under the terms of this Policy or that are in excess of the applicable Limits of Insurance. An agreed settlement means a settlement and release of liability signed by us, an insured and the claimant or the claimant's legal representative.

5. Other Insurance

If other valid and collectible insurance is available to an insured for a "claim" we cover under this Policy, our obligations are limited as follows:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, available to an insured for any "claim" or "suit" covered hereunder, unless such insurance is written as a specific excess insurance policy for limits in excess of this policy. This insurance is also excess of any indemnification agreement requiring another party to indemnify and/or hold harmless an insured under this policy.

6. Representations

You, through your insurance agent or broker have provided information to us which has induced us to issue this policy. Included in this information are an "application" and other correspondence including history regarding your losses, "claims" or incidents which may give rise to "claims" or suits. This history includes a listing of such losses, "claims" or incidents regardless of whether or not insurance may apply.

This information is incorporated into the policy and is material to our decision to issue this policy. You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to offer the terms and conditions under which this policy is issued.

You, on behalf of all insureds, warrant the truth of such information as of the effective date of this policy. You declare that you know of no "claim", incident, event, offense or circumstance which has taken place or becomes known prior to the effective date of this policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the "application" or other correspondence which is provided.

You understand that if such information is false or misleading, it may limit or void coverage under this policy.

7. Transfer Of Rights Of Recovery Against Others To Us

If an insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. No insured may do anything after a loss to impair our rights to recover any payment made under this policy. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

8. Cancellation and Non-Renewal

This Policy may be cancelled by the First "Named Insured" by surrender thereof to us or by mailing to us written notice stating when thereafter the cancellation shall be effective. We may cancel this Policy by mailing a written notice to the First "Named Insured" at the address shown in this Policy. The effective dates of such cancellation shall be not less than thirty (30) days (ten (10) days for non-payment of premium) following mailing of the notice of cancellation. The time of surrender or the effective date of cancellation stated in the notice shall become the end of the "Policy Period".

Delivery of such written notice either by the First "Named Insured" or by us shall be equivalent to mailing. If this Policy is issued to comply with any law or regulation that requires notice of cancellation to any governmental body, cancellation shall not be effective until the required notice has been provided by you or us.

If we cancel this Policy, unearned premium shall be computed pro rata; if the First "Named Insured" cancels, the unearned premium shall be the customary short rate proportion of the premium. In either event, the applicable unearned premium shall be returned to the First "Named Insured" as soon as practicable following the effective date of the cancellation. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of the effective date of the cancellation.

If we elect not to renew this Policy for an additional "Policy Period", we shall mail written notice to the First "Named Insured" at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the "policy period".

9. First "Named Insured" as Sole Representative

The First "Named Insured" shall act on behalf of all insureds with respect to completing the "application" for this insurance, including representing the truth and completeness of all information as required in SECTION V – CONDITIONS, 2. Duties in the Event of a "Claim" and SECTION V – CONDITIONS, 3. Notice of Potential "Claims", giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, agreeing to any changes in this Policy, and electing whether or not to purchase the Supplemental Extended Reporting Period described in SECTION VI – EXTENDED REPORTING PERIODS.

10. Change in Control; Mergers and Acquisitions

a. If, during the "Policy Period", any of the following events occur:

(1) The acquisition of any "Named Insured", or all or substantially all of its assets, by another entity or the merger or consolidation of any "Named Insured" into or with another entity such that the "Named Insured" is not the surviving entity;

**EXHIBIT A, PAGE 15**

(2) The appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any "Named Insured";

Coverage under this Policy will continue in full force and effect with respect to "legal services" rendered before such event, but coverage will cease with respect to "legal services" committed after such event. After any such event, this Policy may not be canceled by the "Named Insured" and the entire premium for this Policy will be deemed fully earned.

b.  If after the effective date of this Policy, the "Named Insured" merges or consolidates with another entity such that the "Named Insured" is the surviving entity or acquires another entity or substantially all of the assets of another entity, no coverage shall be afforded under this Policy for any "claim" involving the assets acquired or the entity which is consolidated or merged with or acquired unless the following conditions are met:

(1) The insured provides written notice of such merger, consolidation, creation, or acquisition to us within thirty (30) days after the effective date of such merger, consolidation, creation, or acquisition, or by the end of the "policy period", whichever is earliest;

(2) The insured provides us with such information as we may deem necessary;

(3) The insured accepts any special terms, conditions, exclusions or additional premium charge as may be required; and

(4) We, at our sole discretion, agree to provide such coverage.

11. Change in Membership of the Firm

The "Named Insured" shall report to us in writing within forty-five (45) days but before Policy expiration, whichever is earlier, any increase in new members, lawyers acting of counsel or as independent contractors, or others qualifying as insureds under SECTION II – WHO IS AN INSURED and providing "legal services" if such increase exceeds 50% of the number of members, employees, lawyers acting of counsel or as independent contractors providing "legal services" on behalf of the "Named Insured" as of the effective date of this Policy.

As part of this reporting requirement, the "Named Insured" will provide any additional information we may require.   We reserve the right to charge an additional premium.

12. Fraudulent Acts

If any insured shall commit fraud in proffering any "claim", this insurance shall become void from the date such fraudulent "claim" is proffered.

13. Assignment of Interest Limitation

Assignment of interest under this policy shall not bind us unless we agree and endorse the assignment onto this policy.

**SECTION VI – EXTENDED REPORTING PERIODS**

In the event this Policy is cancelled or non-renewed by you or us, you may be entitled to the following extensions of coverage.

1.  Basic Extended Reporting Period

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for thirty (30) days. This extension of coverage does not apply if other insurance insures the "claim" for "damages" arising out of "legal services."

2.  Supplemental Extended Reporting Period

A Supplemental Extended Reporting Period is available, but only by endorsement and for an extra premium charge.  The additional premium for the Extended Reporting Period is expressed below as a percentage of the annual premium for the last policy period and will depend on which option you choose, as shown below:

**EXHIBIT A, PAGE 16**

Option 1 – 1 Year,   150%
Option 2 – 2 Years, 250%
Option 3 – 3 Years, 350%

a.  You must give us a written request for the endorsement and pay any premium due within thirty (30) days after the end of the "policy period." The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

b.  The Supplemental Extended Reporting Period starts when the Basic Extended Reporting period set forth in SECTION VI - EXTENDED REPORTING PERIODS 1.

c.  All premiums paid for the Supplemental Extended Reporting Period shall be deemed fully earned and non-refundable as of the first day of the Supplemental Extended Reporting Period.

However, there shall be no entitlement to these extensions if cancellation or non-renewal is due to your:

(1)  Non-payment of premium or Deductible due;

(2)  Failure to comply with the terms and conditions of the Policy; or

(3)  Misrepresentation or Fraud.

These extensions of coverage shall be subject to all the terms and conditions of this Policy and shall apply to any "claim" first made against an insured and reported to us that result from "damages" that arise out of a "legal service" performed subsequent to the Policy effective date or Retroactive Date, if any, and before the end of the "Policy Period."

The fact that the period during which a "claim" may be reported to us under this Policy is extended by virtue of the Basic and Supplemental Extended Reporting Periods does not in any way increase the Limits of Insurance of this Policy.

## SECTION VII – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

1.  "Application" means:

a.  The "application", including any material submitted therewith, for this policy; and

b.  The "application(s)", including any material submitted therewith, for all previous policies issued by us providing continuous coverage until the inception date of this Policy.

2.  "Claim(s)" means a demand for monetary "damages" arising out of a "legal service" made against any insured by service of "suit", the institution of arbitration or administrative proceedings or otherwise, but does not include a demand for equitable or non-pecuniary relief.  "Claim" includes related claims.

3.  "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies.

4.  "Hazardous materials" means "pollutants", lead, asbestos, silica, mold, fungi or bacteria, or radon and materials containing them.

5.  "Legal services" means usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured" described in the Declarations of this Policy including the following services as:

a.  a Notary Public;

b.  an Arbitrator or Mediator;

c.  an Administrator, Conservator, Receiver, Executor, Trustee, Guardian or while acting in a similar fiduciary capacity for clients of the "Named Insured";

d.  a member of a formal accreditation board, ethics review or peer review board if asked to serve on behalf of the "Named Insured";

**EXHIBIT A, PAGE 17**

    e.  a member of a Bar Association.

"Legal services" also includes "personal injury" to which this insurance applies.

6. "Named Insured" means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named on the Declarations.

7. "Personal injury" means injury arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy.

8. "Policy Period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to Section V. 8. of this Policy.

9. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10. "Predecessor firm" means an entity that was engaged in "legal services" to whose financial assets and liabilities the "Named Insured" is the majority successor in interest prior to the effective date of this policy.

11. "Suit(s)" means a civil proceeding with which this insurance applies.  "Suit" includes:

    a.  An Arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent.

EXHIBIT A, PAGE 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:
ALLIED HEALTHCARE PROFESSIONAL COVERAGE FORM CLAIMS-MADE
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
EXCESS PROFESSIONAL LIABILITY POLICY
GARAGE COVERAGE PART
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE AND REPORTED
LIQUOR LIABILITY COVERAGE PART
LONG TERM CARE FACILITIES - PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
REAL ESTATE SERVICES ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2007       □

**EXHIBIT A, PAGE 19**

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
ALLIED HEALTHCARE COVERAGE FORM CLAIMS-MADE
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM
REAL ESTATE ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE

The following is added to EXCLUSIONS (SECTION I): Any and all claims of or relating to the censure

*People v. Ian Trevor Hicks.* **18PDJ002. February 8, 2018.**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

VPRF 10 20 11 14

EXHIBIT A, PAGE 21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA AND CYBER RISK EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE AND REPORTED
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE
INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE AND REPORTED
ERRORS & OMISSIONS COVERAGE FORM CLAIMS-MADE
REAL ESTATE ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE

The coverage provided under this policy does not apply to any "claim", based on or directly or indirectly arising out of:

**A.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other types of nonpublic information; or

**B.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by the **Insured** or others arising out of that which is described in paragraph **A.** or **B.** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

# SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other Officer specified for that purpose in the Statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the below named as the person to whom the said Officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon Janet Shemanske, or her nominee of the Company at 7233 East Butherus Drive, Scottsdale, Arizona 85260, and that in any suit instituted against the Company upon this policy, it will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.  Nothing herein shall constitute a selection or designation of forum, or a waiver of any of the Company's rights to select a forum or court, including any of the federal courts of the United States.

VUM SOS 01 16

**EXHIBIT A, PAGE 23**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICYHOLDER NOTICE – COLORADO

This endorsement modifies insurance provided under the following:

ALL COVERAGES

**This contract is delivered as surplus lines insurance under the Nonadmitted Insurance Act. The insurer issuing this contract is not admitted in Colorado but is an approved nonadmitted insurer. There is not protection under the provisions of the Colorado Insurance Guaranty Association Act.**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**EXHIBIT A, PAGE 24**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

ALLIED HEALTHCARE PROFESSIONAL COVERAGE FORM CLAIMS-MADE
COMMERCIAL EXCESS LIABILITY
COMMERCIAL EXCESS PROPERTY INSURANCE COVERAGE
COMMERCIAL GENERAL LIABILITY COVERAGE
COMMERCIAL INLAND MARINE COVERAGE
COMMERCIAL PROPERTY COVERAGE
ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
EXCESS PROFESSIONAL LIABILITY POLICY
GARAGE COVERAGE
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS-MADE AND REPORTED
LONG TERM CARE FACILITIES – PROFESSIONAL LIABILITY COVERAGE PART
OWNERS CONTRACTORS PROTECTIVE LIABILITY COVERAGE
PRODUCTS COMPLETED OPERATIONS LIABILITY COVERAGE
RAILROAD PROTECTIVE LIABILITY COVERAGE
REAL ESTATE SERVICES ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE

This endorsement sets forth the minimum earned premium for the policy which is calculated in accordance with the following:

1. The minimum premium for the policy period is $6,348 of the total policy premium as shown on the Declarations plus any premium adjustment due to endorsements and any additional premium developed by premium audit; and

2. Audits that result in a return premium will not reduce the minimum premium as stated in 1. above; and

3. If the insured cancels this policy and the policy is not subject to premium audit, the return premium will be 90% of the unearned policy premium.  In no event, however, will the company retain less than 25% of the minimum premium as stated in 1. above.; and

4. If the insured cancels this policy and the policy is subject to premium audit, the earned premium will be determined by the final audit.  In no event, however, will the company retain less than 25% of the minimum premium as stated in 1. above; and

5. If the company cancels the policy for any reason other than for non-payment of premium, the insured will be returned the full amount of the unearned premium without any minimum premium restrictions.

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*

**EXHIBIT A, PAGE 25**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number:   01

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| VUMB0174303 | 08/07/2020 | Berkley Assurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| The Law Office of Ian T Hicks LLC | Marlo Edwards |

| COVERAGE PARTS AFFECTED |
|---|
| All Coverage Parts |

### CHANGES

In consideration of a return premium of $█████, minimum earned premium applied, it is hereby understood and agreed that this policy is cancelled effective  08/07/2020 12:01 A.M. Standard Time.

All Other Terms and Conditions of the Policy Remain Unchanged

*Marlo Edwards*
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number:  2

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| VUMB0174303 | 08/07/2020 | Berkley Assurance Company, A+ XV (Non-Admitted) |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| The Law Office of Ian T Hicks LLC | Marlo Edwards |

**COVERAGE PARTS AFFECTED**

Professional Liability - E&O

### CHANGES

In consideration of an additional premium of $█████, it is hereby understood and agreed that the policy is reinstated as of 8/7/2020 with no lapse in coverage.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

*Marlo Edwards*
_____
Authorized Representative

**EXHIBIT A, PAGE 27**